AO 106 (Rev. 04/10) Application for a Search Warrant

RTG for AUSA Cline

# UNITED STATES DISTRICT COURT

FILED

for the
Southern District of California

2018 AUG 10 AM 11: 42

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No. 18 MJ 9909
)
(1) Black ZTE Model Z839 Cellular Phone; IMEI: )
864668033776450 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A
(INCORPORATED HEREIN)

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B
(INCORPORATED HEREIN)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8 U.S.C. Section 1324 | Transportation of Illegal Aliens |

The application is based on these facts:

SEE AFFIDAVIT OF BORDER PATROL AGENT JOHN COSTELLO

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

John Costello, Border Patrol Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8-10-2018 @ 9:10 am

_____
*Judge's signature*

City and state: El Centro, California     Honorable Peter C. Lewis, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violations of Title 8, United States Code Section 1324, is described below:

> Black ZTE Model Z839 Cellular
> IMEI: 864668033776450
> Case No. IDO1806000046
> RE: Nicholas James SANCHEZ

Currently in the possession of the Department of Homeland Security, United States Border Patrol, Indio Station, 45620 Commerce Street in Indio, California 92201 (Evidence Vault).

## ATTACHMENT B

## ITEMS TO BE SEIZED

The following evidence to be searched for and seized pertains to violations of Title 8, United States Code, Section 1324:

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

    a. tending to indicate efforts to smuggle undocumented aliens from Mexico to the United States or smuggle undocumented aliens further into the interior of the United States;

    b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, phone numbers that may contain electronic evidence tending to smuggle undocumented aliens from Mexico to the United States or smuggle undocumented aliens further into the interior of the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in smuggling illegal aliens from Mexico to the United States or smuggling undocumented aliens further into the interior of the United States;

    d. tending to identify travel to or presence at locations involved in smuggling undocumented aliens from Mexico to the United States or smuggling undocumented aliens further into the interior of the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the subject phone; or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

**Which are evidence of violations of Title 8, United States Code, Section 1324**

The seizure and search of the cellular phone(s) shall follow the procedures outlined in the supporting affidavit.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>(1)  Black ZTE Model Z839 Cellular Phone; IMEI: 864668033776450 | Case No.: 18 MJ9909<br><br>AFFIDAVIT OF U.S. BORDER PATROL AGENT JOHN E. COSTELLO IN SUPPORT OF SEARCH WARRANT |

## AFFIDAVIT

I, John E. Costello, a United States Border Patrol Agent with the United States Border Patrol ("USBP"), Customs and Border Protection, Department of Homeland Security, having been duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of an alien smuggling investigation conducted by USBP agents for the following target property: one (1) Black ZTE Model Z839 Cellular Phone Black ZTE Model Z839 Cellular Phone; IMEI: 864668033776450 (hereinafter referred to as "Target Telephone") seized from Nicholas James SANCHEZ ("Defendant" or "SANCHEZ") on and about June 19, 2018.

2. Target Telephone was seized from SANCHEZ on or about June 19, 2018, at the time of arrest. It is believed that the Target Telephone was used by SANCHEZ to communicate with co-conspirators, during an alien smuggling event involving the six aliens in the Southern District of California, more specifically Indio, California. Probable cause exists to believe that the Target Telephone

contains evidence relating to violations of Title 8, United States Code, Section 1324. The specified telephone is currently in the possession of the Department of Homeland Security, United States Border Patrol, Indio Station, 45620 Commerce Street in Indio, California 92201 (Evidence Vault). Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

3. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I submit this Affidavit in support of the application to search the Target Telephones for and to seize, as it pertains to violations of Title 8, United States Code, Section 1324, Alien Smuggling, all communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, applications and/or location data:

    a. tending to indicate efforts to smuggle undocumented aliens from Mexico to the United States or smuggle undocumented aliens further into the interior of the United States;

    b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, phone numbers that may contain electronic evidence tending to smuggle undocumented aliens from Mexico to the United States or smuggle undocumented aliens further into the interior of the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in smuggling illegal aliens from Mexico to the United States or smuggling undocumented aliens further into the interior of the United States;

    d. tending to identify travel to or presence at locations involved in smuggling undocumented aliens from Mexico to the United States or smuggling undocumented aliens further into the interior of the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject phone; or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

## **EXPERIENCE AND TRAINING**

4. I have been a Border Patrol Agent (BPA) with the United States Border Patrol (USBP) since August 7th, 2006. 1. I graduated from the USBP Basic Border Patrol Training Academy in 2006. The 19-week Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), criminal law, and statutory authority, as well as cross-training in Title 21 of the United States Code (Controlled Substance Act (CSA) violations) and Title 19 of the United States Code (customs law violations). I have been trained in investigating various violations of federal law, including alien smuggling, narcotics smuggling, weapons smuggling, and bulk currency smuggling. I have also worked with and learned from other agents and criminal investigators with extensive experience in these investigations.

5. As a BPA, I am a Federal Law Enforcement Officer within the meaning of Rule 41(b) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States, and thereby authorized to request issuance of federal search and seizure warrants. As an Agent with the Border Patrol, my responsibilities include the investigation of possible violations of Immigration and Nationality laws (Title 8, United States Code), including alien smuggling in violation of Title 8, United States Code, Section 1324, and related offenses.

6. My first assignment with the USBP was as a patrol agent detailed to the Campo Area of Responsibility (AOR) from August 2006 through March 2009. Beginning in March 2009, I was assigned to the Campo Station Abatement Team

3

(CSAT), which conducted USBP intelligence operations in the Campo AOR. My duties included investigating criminal alien smuggling organizations, criminal undocumented aliens (UDAs) that were present in the United States illegally, and criminal UDAs that returned illegally to the United States after deportation. During my time in CSAT, I regularly and routinely engaged in observation and surveillance of criminal alien smuggling organizations, apprehension of persons involved in alien smuggling, and in the preparation of criminal cases against such persons. I worked in CSAT until January 2013, when I was assigned to BEST as a Task Force Officer in San Ysidro, California. BEST is tasked with investigating, arresting, and prosecuting alien smuggling and human trafficking organizations that utilize the Southern District of California as an operational corridor.

7. As a BPA, I have become intimately familiar with the patterns and practices of alien smuggling organizations, including the smuggling, harboring, aiding, and transportation of illegal UDAs, as well as with the documents used to obtain entry for such UDAs, including illegally-obtained, counterfeit, altered, or stolen immigration documents. In the course of my duties, I have worked closely and extensively with Special Agents from HSI targeting both alien and narcotics smuggling organizations; presented complex criminal investigative findings to the United States Attorney's Office; prepared cases against persons involved in the smuggling of UDAs into the United States for prosecution; conducted multiple post-indictment/information interviews; participated in the drafting of affidavits for pen registers/trap and trace orders, tracker warrants and Title III Electronic Surveillance warrants; drafted comprehensive reports based upon multiple smuggling events and information that originated from multiple sources; and conducted in-depth telephone analysis.

8. Through the course of my career, through training, investigations, and conversations with other law enforcement personnel, I have become aware that it is a

4

common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving alien smuggling. Typically, load drivers smuggling humans across the border, or to the interior from the border, are in telephonic contact with co-conspirators immediately prior to, during and following the smuggling event. These communications typically consist of instructions on how/where to cross or pick up undocumented aliens, directions of travel, and locations for delivery to stash houses and/or sponsors. Alien smugglers and their organizations use cellular and digital telephones, in part, because these individuals believe law enforcement is unable to track the origination and destination phone numbers of calls placed to and from cellular and digital telephones.

9. I have arrested and interviewed numerous alien smugglers. Through these experiences, I have become familiar with the activities of those who coordinate smuggling events and the practices employed by the drivers/smugglers locally and abroad, including transportation methods and tactics used to communicate with the drivers and avoid detection by law enforcement.

10. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of alien smuggling investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

11. Based upon my training and experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a.    Alien smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

5

b. Alien smugglers will use cellular telephones because they are able to actively monitor the progress of the aliens while they are in transit.

c. Alien smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time the aliens will arrive at predetermined locations.

d. Alien smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of the aliens.

e. Alien smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f. Alien smugglers and their co-conspirators often use cellular telephones to communicate with load drivers who transport the aliens.

## FACTS SUPPORTING PROBABLE CAUSE

12. I, BPA John Costello, having read the probable cause statement authored by Supervisory Border Patrol Agent (SBPA) Daniel Brightman can attest that the following account is true and correct. This account of the circumstances surrounding the arrest of Elverth Adan RODRIGUEZ and Nicholas James SANCHEZ for Title 8 United States Code 1324 (8 USC 1324; alien smuggling) was taken directly from the U.S. Department of Homeland Security Report Of Investigation Form: G166F (Refer to G166F # IDO1806000046).

13. According to the facts I have read, I understand that BPA's from the Indio Border Patrol Station and assigned to the Indio Station's area of responsibility (AOR) were conducting patrol duties when they responded to a report of a suspicious vehicle traveling north on the Juliet Road near Ocotillo Wells, California. Juliet Road is a dirt maintenance road that both parallels and is used by the US Gypsum Mine's rail line. This rail line runs relatively north from

the US Gypsum's factory called "Plaster City", located approximately six (6) miles east of Ocotillo, California in the southern portion of Imperial County on West Even Hewes Highway. West Even Hewes Highway runs east and west and parallels the north side of Interstate 8. The rail line returns south back toward "Plaster City" while the Juliet Road turns into Split Mountain Road. Split Mountain Road is a two-lane road running north and south and ends as it exits on to the Highway 78, near Ocotillo Wells, California. All are located in San Diego, County. Juliet Road is known by Border Patrol Agents familiar with the area as a road commonly traveled by alien smugglers. This road provides a natural circumvention of the checkpoint located on Highway 86 in Westmorland, California. This circumvention makes it a preferred route of travel for smugglers attempting to transport UDAs north without being detected by the Border Patrol.

14. At approximately 5:20 A.M., on June 19, 2018, SBPA Walla observed a dark-green colored Jeep Cherokee pass his location at a high rate of speed, traveling north on Split Mountain Road. The vehicle was dusty, as it appeared to have been driving through the desert. He observed the vehicle appeared to have multiple occupants, with passengers sitting in the second row and in the rear cargo area. SBPA Walla sped up to get behind the vehicle and performed a vehicle registration/ stolen records check through El Centro Sector Radio: California license plate # 3XEP086. The vehicle information returned to a 1997 Jeep Cherokee, with a release of liability/ recent transfer out of San Bernardino, California. SBPA Walla then performed a vehicle stop on the Jeep, in his fully marked US Border Patrol Vehicle, by turning on the emergency lights. The green Jeep Cherokee yielded on the dirt shoulder of Split Mountain Road. SBPA Daniel Brightman backed up SBPA Walla in his service vehicle.

15. As SBPA Walla approached the Jeep, he counted at least five (5) individuals sitting in the rear seat and cargo area, with a driver and passenger in the

7

front seat. SBPA Walla made contact with the driver, identified as Elverth RODRIGUEZ, and questioned RODRIGUEZ as to his citizenship, to which RODRIGUEZ stated he is a United States Citizen. He questioned RODRIGUEZ as to the several passengers in his vehicle, to which he answered "I don't know them, they were stranded and I picked them up". SBPA Walla asked RODRIGUEZ if he had been arrested before, and RODRIGUEZ answered "no", then answered "yes". RODRIGUEZ was asked if he had been arrested for alien smuggling before, and he answered "yes, I have". He asked the passengers in the vehicle if they were from Mexico, to which they all answered "yes". SBPA Walla asked them if they had documents to be in the United States, to which they all answered "no". RODRIGUEZ was placed under arrest for 8 USC 1324.

16. I also read the report written by SBPA Brightman detailing his initial contact with RODRIGUEZ and SANCHEZ. These circumstances were documented on the U.S. Department of Homeland Security Memorandum Of Investigation Form: G166C (Refer to G166C authored by Agent Brightman) which depict the following circumstances: SBPA Brightman assisted SBPA Walla and arrested the front passenger, identified as Nicholas James SANCHEZ, also for 8 USC 1324. SBPA Brightman observed and subsequently seized a black ZTE cell phone (Target Telephone) located on the passenger's seat of the green Jeep Cherokee driven by RODRIGUEZ. This is where SANCHEZ was sitting when initially encountered and arrested by SBPA Brightman. SBPA Brightman then observed and subsequently seized a black LG cell phone located on the driver's seat where RODRIGUEZ was sitting before being arrested by SBPA Walla. SBPA Brightman documents in his G166C that he had initially observed the phones upon SANCHEZ exiting the green Jeep Cherokee.

17. In total, there were six (6) additional passengers in the vehicle, sitting in an area made for three passengers. All six (6) passengers claimed to be citizens

8

and nationals of Mexico, with no legal right to be in, remain, or work in the United States legally. The vehicle, two cellular telephones to include the Target Telephone, two principals, and six (6) smuggled illegal aliens were transported to the Highway 86 Border Patrol Checkpoint located at 3900 CA-86 State Highway in Westmorland, California 92281, for further processing.

18. RODRIGUEZ and SANCHEZ were then transported by BPA's Kalina Massie and myself, John Costello, with the two cellular telephones (to include the Target Telephone) to the El Centro Border Patrol Station to better facilitate their post Miranda statements. I showed SANCHEZ the Target Telephone and asked if the phone was his property. SANCHEZ confirmed verbally that the phone I was holding, the Target Telephone, was his. I then asked for consent to search the Target Telephone to which SANCHEZ declined consent to a search of his cellular telephone. The Target Telephone was seized and SANCHEZ was returned to the Highway 86 Checkpoint for booking.

## METHODOLOGY

17. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the

9

network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

20. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that SANCHEZ used Target Telephone to facilitate the offense of alien smuggling and to communicate with co-conspirators. The Target Telephones was likely used to facilitate the offense by transmitting and

storing data, which constitutes evidence, fruits, and instrumentalities of violations of Title 8, United States Code, Section 1324.

21. I also believe that probable cause exists to believe that evidence, fruits and instrumentalities of illegal activity committed by SANCHEZ continues to exist on the Target Telephones.

22. Based upon my experience and training, consultation with other agents in alien smuggling investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth above in Paragraph 3 are likely to be found in the property to be searched described above in Paragraph 1. Therefore, I respectfully request that the Court issue a warrant authorizing me, an Agent with the USBP, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A (Target Telephone) and seize the items listed in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

John E. Costello
U.S. Border Patrol Agent-Intelligence

Subscribed and sworn to before me this 10th day of August, 2018.

The Honorable Peter C. Lewis
United States Magistrate Judge

11